No. 24,166.

JOHN LEPORIN and A. W. SKAER, *Appellants.* v. THE STATE EXCHANGE BANK OF HUTCHINSON., *Appellee.*

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion denying a rehearing filed May 12, 1923. (For original opinion of affirmance, see *ante,* p. 76, 213 Pac. 650.)

S. B. Amidon, of Wichita, W. H. Carpenter, W. R. Carpenter, both of Marion, F. L. Martin, of Hutchinson, and A. E. Crane, of Topeka, for the appellants.

A. C. Malloy, R. C. Davis, and Warren H. White, all of Hutchinson, for the appellee.

OPINION DENYING APPLICATION FOR A REHEARING.
(Filed May 12, 1923.)

The opinion of the court was delivered by

HOPKINS, J.: A petition for rehearing has been filed by plaintiffs in which they contend that the letter releasing the escrow was not before the trial court when it considered the demurrer to plaintiffs' evidence and should not have been considered by this court. The letter was an exhibit to defendant's answer to which plaintiffs had filed a verified reply. Plaintiffs gave this letter extensive consideration in their original brief filed in this court. In referring to it they used this language:

"In this statement, however, the attorney for the defendant introduced an agreement in the form of a letter and an acceptance by C. J. Skirvin, H. D. Mollohan and Walter Grundy. By this writing it appears that on October 30th, 1919, the defendant, The State Exchange Bank, wrote a letter to C. J. Skirvin, Wichita, Kansas, reciting that the bank was an escrow holder," etc.

A large part of plaintiffs' brief was devoted to a discussion of the bank's alleged liability because of the terms of this letter. Under the head "Points Relied Upon" plaintiffs made four assignments, in each of which they referred to and treated the letter as part of the evidence and sought relief thereon. The petition for rehearing states that the reference to the letter was an inadvertence on the part of counsel and that plaintiffs should not be bound thereby. We are unable to see how plaintiffs' new contention could change the final result. The question was on a demurrer to plaintiffs' evidence. Even if the letter was not before the trial court in considering the demurrer, plaintiffs failed to make a case. They failed to show that the defendant bank had any knowledge of the interest of the assignee at the time of the release of the escrow. This was essential to a recovery. They also failed to show damages in any amount. There are cases where an escrow holder wrongfully releases an escrow, and, in order to recover, it is not necessary to prove the amount of damages; but the circumstances in this case would not justify the application of such a rule. We have given careful consideration to all the propositions raised by plaintiffs but find nothing that would warrant a resubmission of the case. The application for a rehearing is denied.

HARVEY, J. (dissenting): A rehearing should be granted in this case, if for no other reason, than to base the opinion upon questions presented by the record. As I view it, the decision handed down in this case is inaccurate for the reasons, first, it is based in part upon questions not in the record nor properly before this court, and second, it omits the consideration of material questions presented by the record.

As to the first: This is an appeal from the judgment of the trial court sustaining defendant's demurrer to plaintiffs' evidence. Defendant's answer, among other things, set out the letter of October 30, 1919, quoted in the opinion, and relied upon it as one of the material elements of its defense. This letter was put in issue by a verified reply. It was never offered in evidence, hence it could not have formed any part of the basis for the judgment of the court in sustaining a demurrer to the evidence, and is no part of the record to be considered by this court. It is true that appellants, in their brief, refer to this letter and comment upon it at length, but I understand we are called upon to pass upon questions presented

by the record and not upon erroneous statements in the briefs of the parties.

As to material questions presented by the record and not passed upon by the opinion of this court, a brief statement may assist in understanding them. On October 17, 1919, C. J. Skirvin, trustee, held title to a certain interest in an oil and gas lease on land in Butler county, which he sold on payments to parties taking the title in the name of C. J. Skirvin (individually, not as trustee). This lease, and the assignment by Skirvin, trustee, of the interest therein which was sold, and the agreement for the sale thereof, were deposited in the defendant bank under a written escrow agreement, by which the bank was to hold the lease and assignments until C. J. Skirvin paid into the bank $302,500, in stated installments, and then the lease and assignments were to be delivered to C. J. Skirvin; and the escrow agreement provided that this $302,500 when, and as, paid into the bank, was to be paid by it, three-fifths to Walter Grundy, and two-fifths to N. K. Skirvin.

On October 21, 1919, the original escrow agreement was modified by an agreement in writing by which, the $302,500 to be paid into the bank, $202,500 was to be paid out by it as provided in the original escrow agreement, and $100,000 was to be paid to the Guaranty Title & Trust Company, *trustee,* and this written agreement specifically provided that the lease contracts attached to the escrow agreement should remain in the defendant bank until this $100,000 had been paid. This written agreement was signed by C. J. Skirvin, (individually, not as trustee) and by Walter Grundy and N. K. Skirvin, and was accepted in writing on the instrument by the defendant bank thus: "Accepted. State Exchange Bank, Hutchinson, Kansas. E. B. Bradbury, V. P." It will be noted that the beneficiaries of the Guaranty Title & Trust Company, trustee, are not disclosed by this agreement.

On October 23, 1919, H. D. Mollohan, representing himself to be the beneficiary of $75,000 of the money to be paid to the Guaranty Title & Trust Company, trustee, by the defendant bank under the modified escrow agreement above noted, made a written assignment thereof to plaintiffs, notice of which assignment was accepted thereon by the Guaranty Title & Trust Company, trustee. Plaintiffs alleged and offered evidence tending to prove that Mollohan was the beneficiary to the amount of $75,000 of the $100,000 to be

paid by the defendant bank to the Guaranty Title & Trust Company, trustee, and had a right to make this assignment.

On October 30, 1919, the defendant bank delivered the oil and gas lease and assignment held by it under the escrow agreements above mentioned, upon the payment of $125,000, instead of $302,500, without notice to the Guaranty Title & Trust Company, trustee, and without its knowledge or consent.

The opinion filed does not note the fact that the defendant bank accepted in writing the modified escrow agreement of October 21, in which, and by such acceptance, it agreed to hold the assignments of the oil lease until the $100,000 was paid and then to pay it to the Guaranty Title & Trust Company, trustee. Whether the defendant bank had a right to ignore this agreement and its own written acceptance thereof is an important question in this case presented by the record and which should be decided.

The opinion filed does not note the fact that the Guaranty Title & Trust Company was to receive this $100,000 as trustee of undisclosed beneficiaries, nor does it discuss the duty of the defendant, the escrow depository, to deal with such trustee in regard to that fund. The opinion says, "We conclude, from a careful reading of the record, that the Guaranty Title & Trust Company was no more, perhaps, than a prospective accommodation holder for Mollohan." Perhaps I do not grasp the meaning of the term "accommodation holder" in this case, but the record leaves no room for speculation as to the capacity in which the Guaranty Title & Trust Company was acting. It was acting as the trustee of an undisclosed beneficiary, and, as such, had the legal title to the fund to be paid, and full authority to act concerning it, and of these facts the defendant bank had full knowledge in writing.

By the modified escrow agreement of October 21, the Guaranty Title & Trust Company, trustee, became an interested party in the instruments held by the escrow depository and in the fund to be paid to it. To me it seems improper for the syllabus to correctly state that an escrow agreement may be changed by consent of all of the interested parties and for the opinion to omit to discuss the effect of the lack of consent of one of the interested parties having the legal title to $100,000 of the escrow fund.

It should be remembered that, generally speaking, there is no such thing known to the law as a substantial compliance with an escrow agreement by the escrow depository. The escrow depository

either complies with the escrow agreement or it does not. In this case, the escrow depository did not comply with the escrow agreement. No one contends that it did. But it does not necessarily follow that an escrow depository is liable in damages for making a wrongful delivery, for in some instances no damages would be occasioned thereby, or circumstances might be such as to mitigate the damages. Naturally these questions are matters of defense. Ordinarily when a plaintiff shows that he is interested in papers or a fund in escrow and that there has been a wrongful delivery, he has made at least a *prima facie* case and a demurrer to his evidence should not be sustained.

Other material questions raised pertain to the right of the plaintiffs to maintain this action and to the measure of damages, but as neither of these questions has been seriously considered by this court, I shall not discuss them.